The Honorable Jerry Taylor State Representative 6203 Ridgewood Drive Pine Bluff, AR 71603-7738
Dear Representative Taylor:
I am writing in response to your request for my opinion on the following question:
 Would it be lawful for municipalities to have funds that are transmitted to them from the state deposited directly into their Arkansas Local Government Cash Management Trust accounts? The trust was established pursuant to the Local Government Joint Investment Trust Act, Arkansas Code Ann. § 19-8-301 through 310, and is managed administratively by Stephens Inc. The funds to be deposited would include the Street and General Turnbacks and the City Sales Tax collections.
RESPONSE
In my opinion, the answer to your question is, in all likelihood, "no."
The Local Government Joint Investment Trust Act (the "Act"), A.C.A. §19-8-301 et seq. (Repl. 1998), authorizes any ten or more local governments to create by ordinance a trust for the purpose of making joint investments. A.C.A. § 19-8-304. The municipalities at issue in your request have apparently formed such a trust to be funded in whole or in part from city sales tax collections and "street and general turnbacks." With respect to this latter category of revenues, I assume that you are principally referring to funds made available from the "Municipal Aid Fund" under A.C.A. § 19-5-601 (Repl. 1998), which consists of general revenues made available by the Revenue Stabilization Law, A.C.A. §19-5-101 et seq., special highway revenues made available by the Arkansas Highway Revenue Distribution Law, A.C.A. § 27-70-201 et seq., and special revenues specified in the Revenue Classification Law, A.C.A. § 19-6-101et seq. Your concern is apparently whether the municipalities are authorized to direct the State Treasurer to deposit these funds directly into their Arkansas Local Government Cash Management Trust accounts, rather than remitting them to the local treasurers subject to subsequent appropriation by the municipalities' governing bodies.
With respect to the disposition by the state of city sales taxes to the various municipalities, A.C.A. § 26-75-217(a) provides in pertinent part:
 The State Treasurer shall transmit to the treasurer or financial officer of each such city that city's share of local sales and use taxes collected under this subchapter periodically as promptly as feasible. Transmittals required under this subchapter shall be made at least monthly in each state fiscal year. Funds so transmitted may be used by the city for any purpose for which the city's general funds may be used.
This statute is unequivocal in directing that the State Treasurer transmit city sales tax revenues to the city treasurer or financial officer, not to a joint investment trust account.
With respect to distributions from the Municipal Aid Fund, A.C.A. § 19-5-601(b)(1) provides.
 All of the general revenues and the special revenues shall be distributed within ten (10) days after the close of each calendar month to the respective cities of the first and second class and incorporated towns on the basis of population according to the most recent federal decennial or special census.
Although this statute does not specify the city official who should receive each distribution, logic dictates that it should be the treasurer. See A.C.A. § 27-70-207(b)(1) (Supp. 2001) (directing that the State Treasurer transfer highway revenues in the Municipal Aid Fund "to the treasurers of the respective" municipalities). In my opinion, the provisions of A.C.A. § 19-5-601(b)(1) foreclose any direct deposit of Municipal Aid Fund revenues into a joint investment trust account. Any such direct deposit further seems anathema in light of A.C.A. §14-59-104, which provides:
 (a) All municipalities of this state receiving state aid in the form of either turnback of general revenues or highways revenues shall maintain all funds in depositories approved for such purposes by law.
 (b) The municipalities shall maintain separate bank accounts for general funds and street funds.
(c) The accounts shall be maintained in the name of the municipality.
 The concept of automatically depositing funds into a joint investment trust further seems inconsistent with A.C.A. § 19-8-304(a), which authorizes the investment only of "moneys not currently needed by the local governments creating the trust" — a qualification that suggests the municipalities will necessarily engage in an ongoing process of review and, if feasible, appropriation. This process in itself appears inconsistent with the concept of automatic direct deposits.
I further believe revenues transmitted to a municipal treasurer should not be removed from the treasury without first being appropriated by the municipality's governing body. In this regard, I fully concur with the analysis set forth in Ark. Op. Att'y Gen. No. 91-416, which addressed whether federal forfeiture money received by municipal law enforcement must be appropriated before being spent:
 . . . I have been unable to find a provision expressly stating that no money may be taken from the city treasury without an appropriation. Additionally, Article 16, Section 12 of the Arkansas Constitution ["No money shall be paid out of the treasury until the same shall have been appropriated by law, and then only in accordance with said appropriation."] apparently has not yet been found applicable to municipalities. Nevertheless, other provisions of Arkansas law appear to contemplate the appropriation of money in the city treasury. For example, A.C.A. § 14-42-308(a) (1987) requires that the governing body of each municipality operating under a charter to prepare, approve, and publish annually a proposed budget of operational expenditures of the municipality for the forthcoming year. Other provisions state that approval of the budget by the governing body of the municipality shall amount to an appropriation of the funds that are lawfully applicable to the different items contained in the budget. See, e.g., A.C.A. § 14-47-125 (1987); A.C.A. § 14-48-122(a) (1987); and A.C.A. § 14-58-203
(1987). In addition, A.C.A. § 14-46-244 (1987) refers to ordinances or resolutions appropriating money. Thus, it is my opinion that federal forfeiture funds received by municipal law enforcement agencies must be appropriated before they can be removed from the city treasury. The appropriating body for funds in a city treasury would appear to be the governing body of the municipality, such as the city council or the board of directors, depending upon the form of government the municipality has adopted. See, e.g., A.C.A. 14-47-125 (1987); A.C.A. § 14-48-122(a) (1987); and A.C.A. § 14-58-203 (1987).
See also A.C.A. §§ 14-55-204 ("All bylaws, ordinances, resolutions, or orders for the appropriation of money shall require for their passage or adoption the concurrence of a majority of the aldermen of any municipal corporation."); 14-43-502(b)(1) (charging city council with "management and control of finances"). As my immediate predecessor noted in Opinion No. 97-290:
 Generally, unless a particular statutory provision directs the transmission of collected moneys to some specific fund, it appears that those moneys are to be deposited in the city treasury. See, e.g., Op. Att'y Gen. 92-017. Budgetary appropriations are then made by the city. See generally, A.C.A. §§ 14-48-122 and 14-58-203(a).
Finally, I should note that in dispensing funds received from the Municipal Aid Fund, a city must obviously honor any statutory restrictions placed on the use of such funds. See, e.g., A.C.A. §27-70-207(b)(1) (directing that special highway revenues be submitted "for credit to the street fund, there to be used for the maintenance, construction, and reconstruction of streets which are not continuations of state highways.").
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh